# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Blemaster,<br><br>    Plaintiff,<br><br>  vs.<br><br>Horatiu Cornelius Sabo, Rare Cornel Sabo, *et al.*,<br><br>    Defendants.<br>_____<br>Horatiu Cornelius Sabo & Rare Cornel Sabo,<br><br>    Counterclaimants,<br><br>  vs.<br><br>Michael Blemaster,<br><br>    Counterdefendant. | 2:16-cv-04557 JWS<br><br>**ORDER AND OPINION**<br><br>[Re: Motions at Dockets 53 & 56] |

## I. MOTIONS PRESENTED

At docket 53 plaintiff and counterdefendant Michael Blemaster ("Blemaster") moves to compel defendants and counterclaimants Horatiu Cornelius Sabo and Rare Cornel Sabo (collectively, "the Sabos") to provide further responses to his discovery requests pursuant to Federal Rule of Civil Procedure 37(a) and moves for an order

extending his discovery deadline pursuant to Rule 16(b). The Sabos oppose at docket 54. Blemaster replies at docket 55.

At docket 56 Blemaster moves for an order extending the deadline for filing a motion for leave to amend his complaint pursuant to Rule 16(b). The Sabos oppose at docket 61. Blemaster replies at docket 62.

Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This action presents a dispute regarding the ownership of real property in Phoenix formerly owned by Ana Viorica Tataru ("Tataru"). Tataru executed a beneficiary deed in 2014 under which the property would be conveyed to her sons, the Sabos, upon her death.[1] Tataru died on May 18, 2016.

Blemaster asserts that approximately two weeks before Tataru's death a company called RCU, Inc. ("RCU") entered into a $420,000 purchase option contract with Tataru.[2] RCU describes itself as a "licensed Arizona Real Estate agent who buys and sells property for a profit."[3] On May 3 an "affidavit and memorandum of agreement concerning real estate" executed by RCU and Tataru was recorded with Maricopa County Recorder's office.[4] Blemaster alleges that on May 15 he entered into a real

---

[1] Doc. 1-3 at 49–50.

[2] *Id.* at 14–16.

[3] *Id.* at 14.

[4] *Id.* at 18.

-2-

estate purchase contract with RCU under which he acquired RCU's interest in Tataru's property for $490,000.[5]

Before these real estate transactions closed, Blemaster alleges that he "was informed that Horatiu was going back to Romania, and intended to wait a year before coming back to Arizona to decide whether to sell the Property to Blemaster."[6] Blemaster filed this two-count action in the Arizona Superior Court seeking (1) specific performance of the purchase contract and (2) breach-of-contract damages.[7] The Sabos removed the case to this court pursuant to 28 U.S.C. § 1332[8] and have asserted quiet title counterclaims against Blemaster.[9]

Blemaster served the Sabos with 17 requests for admission ("RFAs"), 9 interrogatories, and 6 requests for production of documents ("RFPs").[10] Blemaster's present motion challenges the Sabos' responses to all of these discovery requests except for RFA No. 2.

---

[5]*Id.* at 20–23.

[6]Doc. 1-1 at 8 ¶ 13.

[7]Doc. 1-3 at 2–27.

[8]Doc. 1.

[9]Doc. 4, 5.

[10]Doc. 53 at 17–55.

### III.  STANDARDS OF REVIEW

**A.     Rule 37**

If a party fails to cooperate in discovery, the requesting party may move to compel.[11]  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."[12]  "Broad discretion is vested in the trial court to permit or deny discovery[.]"[13]

**B.     Rule 16(b)(4)**

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  District courts are "given broad discretion in supervising the pretrial phase of litigation, and [their] decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion."[14]  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."[15]  "Courts within this Circuit 'have articulated and undertaken [a] three-step inquiry in resolving the question of "diligence" in the context of

---

[11]Fed. R. Civ. P. 37(a)(1).

[12]*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

[13]*Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

[14]*Johnson*, 975 F.2d at 607 (omission in original) (internal quotation marks omitted).

[15]*Id.* at 609.  *See also* 6A Charles Alan Wright & Arthur R. Miller, *et al.*, *Fed. Prac. & Proc. Civ.* § 1522.2 (3d ed. 2017).

-4-

determining good cause under Rule 16[.]'"[16] Under that inquiry the movant may be required to show (1) that "he was diligent in assisting the court in creating a workable Rule 16 order"; (2) that "his noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference"; and (3) that "he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order."[17] "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'"[18]

## IV. DISCUSSION

**A. Requests for Admission**

Rule 36(a)(4) prescribes the following standards for RFA answers:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made

---

[16]*Morgal v. Maricopa Cnty. Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (quoting *Grant v. United States*, No. 2:11-CV-00360 LKK, No. 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011), adopted, 2012 WL 218959 (E.D. Cal. Jan. 23, 2012)).

[17]*Id.*

[18]*In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."[19]

If a party believes that another party's answers or objections fail to satisfy these standards, it "may move to determine the sufficiency of an answer or objection."[20] A party does not comply with Rule 36 by offering evasive denials, which do "not 'specifically deny the matter,'" or responses that do "not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter."[21] If the court finds that an answer does not comply with Rule 36, it "may order either that the matter is admitted or that an amended answer be served."[22] Generally speaking, "[p]arties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play."[23]

Blemaster challenges the Sabos' responses to 16 RFAs.[24] In response, the Sabos only specifically address their response to RFA No. 12.

**1.    RFA Nos. 1, 4, 5, 7, 8, 10, 11, 15, 16, and 17**

Blemaster argues that the Sabos' denials to RFA Nos. 1, 4, 5, 7, 8, 10, 15, 16, and 17 are deficient because Interrogatory No. 1 requires them to identify the factual

---

[19] Fed. R. Civ. P. 36(a)(4).

[20] Fed. R. Civ. P. 36(a)(6).

[21] *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981).

[22] Fed. R. Civ. P. 36(a)(6).

[23] *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994).

[24] Doc. 53 at 98–106.

basis of their denials and they did not do so. This deficiency relates to Interrogatory No. 1, not these RFAs. The Sabos' answers to these RFAs are sufficient.

### 2. RFA Nos. 3, 6, and 9

RFA Nos. 3, 6, and 9 ask the Sabos to admit that Tataru signed various documents. For each, the Sabos admit that the documents speak for themselves and deny "any other matter not specifically and expressly admitted."[25] Rule 36 requires answering parties to "specifically deny" all matters not admitted. The Sabos turn this requirement on its head, specifically admitting a non-responsive matter and then generally denying all other matters. The Sabos shall amend their answers to these RFAs.

### 3. RFA Nos. 12, 13

RFA No. 12 asks the Sabos to admit that "no probate proceedings had been commenced with respect to [Tataru] or her property as of April 25, 2017."[26] The Sabos respond by objecting that "probate proceedings" is vague and ambiguous. RFA No. 13 asks the Sabos to admit that they "are the sole members of Ana's Assisted Living, LLC."[27] The Sabos respond by objecting that the question is irrelevant and vague and ambiguous.[28]

---

[25]*Id.* at 98, 100, 101–02.

[26]*Id.* at 103.

[27]*Id.* at 64.

[28]*Id.*

These objections are not justified. With regard to RFA No. 12, the Sabos argue that "probate proceedings" is vague and ambiguous because that phrase can refer to either formal or informal probate proceedings.[29] Maybe so, but this objection misses the mark because the Sabos do not assert that this distinction would make any difference to their answer. With regard to RFA No. 13, Blemaster argues that the request is relevant because the members of Ana's Assisted Living, LLC likely possess knowledge of facts relevant to the claims at issue in this case.[30] Because the Sabos fail to respond to this explanation, their relevancy objection is overruled. Further, their "vague and ambiguous" objection is also overruled, as they offer no explanation as to how the request is vague or ambiguous. The Sabos shall amend their answers to these RFAs.

4.  **RFA No. 14**

RFA No. 14 asks the Sabos to admit that "Ana's Assisted Living, LLC has operated the Property as an assisted living facility since [Tataru's] death.[31] The Sabos respond by objecting that the question is irrelevant and admitting that "Ana's Assisted Living Home, LLC operated *a business* on the premises *for a period of time* after [Tataru] died" and then denying "any other matter not specifically and expressly

---

[29]*Id.* at 3.

[30]*Id.* at 104.

[31]*Id.* at 64.

admitted."[32] This answer is clearly evasive. The Sabos shall amend their answer to this RFA.

**B.    Interrogatories & RFPs**

In response to each of Blemaster's 9 interrogatories and 6 RFPs, the Sabos copied-and-pasted the following nonsensical boilerplate objection:

> These discovery requests are intended to harass Defendant and unnecessarily increase the legal fees and expenses incurred by Defendant; Defendant objects to each request insofar as it seeks information that is protected from disclosure by the attorney-client privilege, investigative privilege, or any other privilege; Defendant objects to each request insofar as it seeks information that is protected from disclosure by the litigation work-product doctrine; Defendant objects to each request insofar as it seeks information that is protected from disclosure by federal law or Arizona law; Defendant objects to the instructions and definitions in Plaintiff's requests insofar as they seek to impose obligations on Defendant that exceed those prescribed by the applicable rules of procedure; Defendant objects to each request to the extent the request seeks documents or information available from public records readily accessible to Plaintiff; Plaintiff objects to each request to the extent the request seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence; Defendant objects to each request to the extent the request seeks documents or information for which the burden of deriving or ascertaining is substantially the same for the Plaintiff as for the Defendant; Defendant objects to each request to the extent the request seeks documents or information for which the burden of deriving or ascertaining is substantially higher for Defendant as for Plaintiff; Defendant objects to each request to the extent the request is unduly burdensome for Defendant; Defendant objects to each request to the extent the request seeks documents or information already in the possession, custody, or control of Plaintiff; Defendant objects to each request to the extent the request is vague, ambiguous, overbroad, compound, or incomprehensible; Defendant objects to each discovery request to the extent the request seeks information that is not in Plaintiff's possession, custody, or control; Defendant's response to any discovery request (1) is not an admission or acknowledgment that such request calls for information or documents relevant to the subject matter of this

---

[32]Doc. 56 at 64 (emphasis added).

-9-

proceeding, (2) is without prejudice to Defendant's right to contend at a hearing or in any other proceeding in this action, or in any other action or proceeding, that such response is inadmissible, irrelevant, immaterial, or not a proper basis for discovery, (3) and is without prejudice to or waiver of any objection to any future use of such discovery that Defendant may make; Defendant continues to investigate the facts and issues in this litigation and reserves the right to rely, at a hearing or any other proceeding in this litigation, or any other action or proceeding, upon documents and information in addition to that provided in response to the requests; Defendant reserves teh [sic] right to amend, explain, change, amplify, and otherwise supplement these responses as required by the rules of procedure.[33]

This is a flagrant violation of the discovery rules. Rule 33(b)(4) requires that "the grounds for objecting to an interrogatory must be stated with specificity" and cautions that "[a]ny ground not stated in a timely objection is waived, unless the court, for good cause, excuses the failure." Similarly, Rule 34(b)(2)(B) requires that "[f]or each item or category," an objecting party must "state with specificity the grounds for objecting to the request, including the reasons." The Sabos' boilerplate objections are inappropriate, tantamount to no objection at all.[34] The Sabos shall serve amended answers to Blemaster's interrogatories and RFPs that respond to each specific discovery request.

In addition, sanctions are mandatory under Rule 26(g). Rule 26(g) states that every objection to a discovery request must be signed by an attorney or party (if unrepresented) who, "[b]y signing, certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the objection is

---

[33]Doc. 53 at 69–81.

[34]*See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (""Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").

-10-

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.[35]

The duty to certify discovery responses "requires the lawyer to pause and consider the reasonableness of his request, response, or objection."[36] Courts have held that the act of making boilerplate objections is prima facie evidence of a Rule 26(g) violation, "because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver."[37]

Rule 26(g)(3) requires the court to impose an "appropriate" sanction against the signer of a discovery response, "the party on whose behalf the signer was acting, or both" when the certification violates the rule "without substantial justification." The sanction "may include an order to pay the reasonable expenses, including attorney's

---

[35] Fed. R. Civ. P. 26(g)(1).

[36] Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment.

[37] *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008). *See also Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 189 (N.D. Iowa 2017) ("The 'natural and probable consequences' of 'boilerplate' objections is delay and impediment of discovery, not the narrowing of issues and the avoidance of expense and delay toward which the discovery rules are aimed. Ordinarily, I would also likely find that the impropriety of employing such frivolous objections in every single discovery response also demonstrates the parties' obstructionist attitude toward discovery and would further confirm suspicions that the responses were interposed for an improper purpose.").

-11-

fees, caused by the violation."[38] The court finds that the Sabos' boilerplate objections are objectively unreasonable, asserted without a reasonable inquiry into the facts. In light of this discovery violation, the court will order the Sabos' counsel to pay the reasonable attorney's fees and costs that Blemaster incurred in challenging these objections.

**C.      Motion to Extend Blemaster's Discovery Deadline**

On August 10, Blemaster filed his present motion to extend "all unexpired deadlines for him to complete discovery and to make any required disclosures" until 90 days after the date the Sabos serve responses to his written discovery requests that comply with the discovery rules.[39] He states that this extension is necessary because he needs those responses in order to prepare for "any witness depositions and to provide potential experts."[40] Blemaster has shown that he has not been able to satisfy his discovery obligations because of the Sabos' inadequate discovery responses, not because of any lack of diligence on his part, and that he promptly sought amendment of the scheduling order. His motion will be granted.

**D.      Motion to Extend Blemaster's Deadline to Amend His Complaint**

At docket 16, defendant Horatiu Cornelius Sabo ("Horatiu") moved for judgment on the pleadings due to Blemaster's failure to allege or attach to his complaint a contract bearing the Sabos' signatures, in violation of Arizona's statute of frauds. The

---

[38]Fed. R. Civ. P. 26(g)(3).

[39]Doc. 53 at 13–14.

[40]*Id.* at 13.

-12-

court denied the motion because the Sabos were in possession of the purchase contract signed by Tataru.[41]  Horatiu moved for reconsideration, arguing that the contract is irrelevant because Tataru "is not a defendant in this case, and neither is her estate."[42]  The court denied Horatiu's reconsideration motion because the complaint adequately alleges that Tataru transferred her legally enforceable obligations under the contract to the Sabos at death via the beneficiary deed.[43]

Based on Horatiu's argument in his reconsideration motion that Tataru's estate is the proper defendant,[44] Blemaster wants to amend his complaint to add the estate as a defendant.  He cannot do so at the present, however, because a personal representative ("PR") for Tataru's estate has not yet been appointed.  Thus, Blemaster now moves for an extension of the September 1, 2017 deadline for adding parties until the shorter of either "(a) 90 days; or (b) 14 days from the appointment of a personal representative" of Tataru's estate.[45]  In response, the Sabos assert that Blemaster's request shows "carelessness, if not intentional delay," because when the scheduling order was entered Blemaster "knew about Mrs. Tataru's death, knew about her sons

---

[41]Doc. 43.

[42]Doc. 44 at 2.

[43]Doc. 46.  *See* A.R.S. § 33-405(A) ("A deed that conveys an interest in real property . . . to a grantee beneficiary designated by the owner and that expressly states that the deed is effective on the death of the owner transfers the interest to the designated grantee beneficiary effective on the death of the owner *subject to all conveyances, assignments, contracts, mortgages, deeds of trust, liens, security pledges and other encumbrances made by the owner or to which the owner was subject during the owner's lifetime*.") (emphasis added).

[44]Doc. 56 at 9.

[45]*Id.* at 1.

-13-

and their ownership of the property left to them by their mother, and knew about the LLC."[46]

Given that a beneficiary deed is an instrument that transfers title to real property to the grantee outside of probate,[47] it is not clear to the court why Tataru's estate must be added as a defendant in this case. That said, the merits of Blemaster's proposed amendment is not currently before the court. All the court must decide now is whether Blemaster has been diligent in seeking to amend the scheduling order. Blemaster states that the need to amend his complaint arose when he realized, from Horatiu's reconsideration motion, that one of the Sabos' defenses is that Tataru's estate is the only proper defendant. Horatiu filed that motion on May 17, 2017. Blemaster filed a petition for probate and for appointment of a PR on July 19, 2017, and the present motion for an extension of time on September 1. Blemaster has shown that he promptly sought amendment of the scheduling order. His motion will be granted.

### V. CONCLUSION

Based on the preceding discussion, the motion at docket 53 is GRANTED IN PART AND DENIED IN PART as follows: the Sabos must amend their answers to Blemaster's interrogatories, RFPs, and RFA Nos. 3, 6, 9, 12, 13, and 14. The Sabos

---

[46]Doc. 61 at 2.

[47]*See* A.R.S. § 14-6101(B); 12 Darren T. Case, Brent W. Nelson & T.J. Ryan, *Arizona Estate Planning and Probate Handbook* § 4:2 (12th ed. 2017) ("The probate process generally does not cover assets passing outside of the decedent's estate, either by contract or operation of law. This may include assets with designated beneficiaries other than the decedent's estate . . . , joint accounts, property passing by rights of survivorship, *real property passing by beneficiary deed*, or assets titled in the name of a trustee that are not payable to the decedent or his or her estate.") (emphasis added).

-14-

must do so no later than December 1, 2017.  All unexpired discovery deadlines as of August 10, 2017, are hereby extended until 90 days after the Sabos serve the discovery responses compelled by this order; in all other respects, the motion is denied.  The motion at docket 56 is GRANTED.  Blemaster may have until the shorter of (a) 90 days from the date of this order or (b) 14 days after the appointment of a personal representative for the Tataru estate to file a motion to amend his complaint.  The Sabos' counsel are ordered to pay Blemaster's reasonable expenses for challenging their boilerplate objections to his interrogatories and RFPs.  If the parties cannot stipulate to the amount of expenses that the Sabos' counsel must pay Blemaster, then within 14 days from the date of this order Blemaster shall file a properly supported motion showing his reasonable expenses, and the Sabos shall respond within 7 days after the motion is filed.  No reply may be filed unless requested by the court.

DATED this 25th day of October 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT